

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GEORGE CONAWAY, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 2:08-CV-01380-LSC |
| | ] | |
| NORFOLK SOUTHERN RAILROAD | ] | |
| CORPORATION, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION AND ORDER

I.    Introduction.

The Court has for consideration a motion for summary judgment (Doc.

25), which was filed on October 23, 2009, by defendant Norfolk Southern

Railway Company ("NSR"), identified in the Amended Complaint as "Norfolk

Southern Railroad Corporation."   Plaintiff George Conaway ("Conaway")

sued NSR for race discrimination and retaliation under 42 U.S.C. § 1981 ("§

1981").[1]  NSR has moved for summary judgment on all of Plaintiff's claims.

_____

[1]While Plaintiff's Amended Complaint includes claims under Title VII of the Civil
Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), those claims have since been
voluntarily abandoned (Doc. 31 at 1-2) and are due to be dismissed.

The issues raised in Defendant's motion for summary judgment have been briefed by both parties[2] and are now ripe for decision.   Upon full consideration of the legal arguments and evidence presented, NSR's motion will be granted in all respects.

II.    Facts.[3]

Plaintiff George Conaway, an African-American male, began his employment as a clerical employee with Norfolk Southern Railway Company in 1978.   NSR operates a freight railroad that runs through twenty-two states, the District of Columbia, and Ontario, Canada.  Conaway worked at "Norris Yard," the main terminal in NSR's Alabama Division.  As a clerical

---

[2]The Court also has for consideration Defendant's Unopposed Motion for Leave to Exceed Page Limitation (Doc. 23); Plaintiff's Motion for Leave to File Response Brief in Opposition to Defendant's Motion for Summary Judgment out of Time (Doc. 29); Plaintiff's Motion to Exceed Page Count for Response Brief (Doc. 30); and Defendant's Unopposed Motion for Extension of Reply Brief Page Limitation (Doc. 34).  These motions are GRANTED.

[3]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

employee of NSR, Conaway was represented by the Transportation Communications International Union ("TCU").

In June 2005, Conaway was terminated by NSR for violating company rules. His position at the time of termination was Chief Clerk to the Chief Dispatcher. Following a Public Law Board arbitration, Conaway was returned to service on February 28, 2007, with seniority and all other rights intact, but without back pay. Instead of returning to his former job, Conaway submitted a written request on March 28, 2007, to displace Ronnie Maddox ("Maddox") (white), a less senior employee, from the job of Chief Clerk to the Superintendent of Terminals ("the Position"). Conaway sent his request to Terminal Superintendant Daniel Moon ("Moon") (African-American). Because Moon was out on medical leave, Assistant Terminal Superintendent Robert Logan ("Logan") (African-American) handled the request.

Employee requests for displacements are governed by provisions in the labor agreement between TCU and NSR, as well as NSR's past practice. A grievance or "claims" procedure is established for resolving disputes over the interpretation or application of labor agreement provisions. Because

Logan was not familiar with all of the procedures in the TCU labor agreement, he consulted Steve Nichols ("Nichols") (white), Assistant Superintendent of the Alabama Division, and Matthew Holt ("Holt") (white), the NSC Labor Relations Officer, about Conaway's displacement request. Holt advised Logan that a successful bidder for a job *vacancy* may be given time to learn the requirements of a position, but NSR historically required *displacing* employees to be qualified to sit down and begin doing the job right away.

Conaway's March 28th displacement request read, in part: "With your approval, I would like to train for this position as soon as possible." (Doc. 27, attach. 4 at 1.) Logan testified that he concluded that Conaway was not qualified to immediately perform the duties of the Position because he had never held the Position in the past, had been away from NSR for twenty-one months, and Conaway himself admitted that he needed training. Logan denied Conaway's displacement request on March 30, 2007. Logan did not compare Conaway's skills to the requirements listed in the Position's job description.

On March 31, 2007, Conaway responded to Logan's denial and submitted a statement defending his qualifications for the Position and explaining:

> Surely, Asst. Supt. Nichols realizes that I have been off work for more than 21 months. I expect to train regardless of the position I accept.
> Changes have been made at Norris Yard since I have been off work, not to mention the safety issues in which I deem important. My desire is to help Norfolk Southern the safest railroad in the world.

(*Id.*, attach. 4 at 2.) On April 1, 2007, Logan again denied Conaway's displacement request, stating that Conaway would have to be "qualified on the job to make a displacement," and "you have been off for over 21 months and therefore I cannot believe that you can be qualified for that position." (*Id.*, attach. 4 at 3.)

NSR concedes that Maddox, the employee Conaway sought to displace, did not have a strong clerical background when he started in the Position in or around November 2006, and he needed time to learn the job. Moon waived the typing speed requirement, and Maddox never took a typing test. However, at the time Maddox bid for the Position, it was vacant and Maddox was the only bidder. By the time Conaway made his displacement request,

Maddox was performing to Moon's satisfaction, but still never took a typing test.  Conaway maintains that he is clearly more qualified for the Position given his extensive history in clerical jobs at NSR and because his typing speed exceeds the requirement listed in the Position's job description.

Moon returned to work on April 23, 2007.  On April 26th, Conaway asked Moon for a C-2 hearing to address the dispute over his qualifications for the Position.  Under Rule C-2 of the TCU labor agreement: "An employee who considers himself unjustly treated, otherwise than covered by these rules, shall have the same right of investigation, hearing, appeal and representation as provided in Rule C-1."  After consultation, Holt advised Moon that Conaway's displacement request was covered by other rules of the TCU agreement—including Rules B-7 and B-14—therefore, Conaway was not entitled to a Rule C-2 hearing.  On April 27, 2007, Moon declined Conaway's request for a C-2 hearing.

TCU filed a claim on behalf of Conaway on May 7, 2007.  TCU argued that NSR violated the labor agreement when it refused to permit Conaway to displace Maddox and denied Conaway's request for a Rule C-2 hearing.  Moon denied the grievance.  TCU appealed the denial to the Alabama

Division Superintendant.  That appeal was denied.  Currently, TCU's claim is under consideration for submission to arbitration before a Public Law Board.

In July 2007, Conaway filed an internal complaint of race discrimination with NSR's EEO office.  Conaway testified that he previously filed an EEOC charge against NSR in 1997.  Conaway could not recall the EEOC's findings in the 1997 matter, but he did not file suit.  It is undisputed that at the time Logan denied Conaway's displacement request, he was not aware that Conaway had ever made any written or verbal statements or complaints alleging race discrimination or racially discriminatory practices by NSR.  It is undisputed that when Moon denied Conaway's request for a C-2 hearing and denied his TCU grievance, Moon was not aware that Conaway had ever made any written or verbal statements or complaints alleging race discrimination or racially discriminatory practices by NSR.  Further, it is undisputed that when Holt advised Logan and Moon concerning the displacement request and request for a C-2 hearing, Holt was not aware that Conaway had ever made any written or verbal statements or complaints alleging race discrimination or racially discriminatory practices by NSR.

In August 2007, the Position was abolished.  The decision to eliminate the Position was not made by local officials at Norris Yard, but by higher level officers at NSR pursuant to a plan to eliminate and/or consolidate clerical positions on a company-wide basis.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the

court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Discussion.

Plaintiff contends that he was not allowed to displace a less senior employee and was subsequently denied a C-2 hearing because of his race and in retaliation for complaining about race discrimination. Conaway also argues that the Position was abolished in retaliation for his filing an internal EEO complaint.

Defendant maintains that Plaintiff's claims regarding the denial of displacement and a C-2 hearing are precluded by the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.*  NSR frames Plaintiff's argument as one that involves a determination whether Conaway was entitled to displacement and/or a C-2 hearing under the terms of the TCU labor agreement with NSR.  Plaintiff's response memoranda concedes that he is alleging his § 1981 rights were violated when NSR "failed to allow Plaintiff to exercise his rights awarded under the [labor agreement]."  (Doc. 31 at 18.) Grievances that involve the interpretation or application of a collective bargaining agreement "must be resolved only through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions."  *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994).  However, it is unnecessary for this Court to make a determination on the preclusion issue.  As outlined below, even if this Court assumes that Plaintiff was entitled, under the TCU labor agreement, to displace Maddox as a less senior employee and have a C-2 hearing, there is insufficient evidence in the record to establish that the denials were based on race and/or retaliatory motive.

A.    Race Discrimination.

Conaway has not asserted that he has direct evidence of race discrimination.  Therefore, we analyze his § 1981 race claims using the analytical framework established by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See, e.g., Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998).  First, the plaintiff must establish a prima facie case of discrimination.  Under *McDonnell Douglas*, a plaintiff establishes a prima facie case of race discrimination by showing: "(1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).  The prima facie case, once established, creates a presumption of discrimination, which the employer must rebut with legitimate, nondiscriminatory reasons for the employment action(s) at issue.  "If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual."  *Standard*, 161 F.3d  at 1331.

Conaway has not proffered sufficient evidence to establish a prima facie case with regard to either of his race discrimination claims. There is no evidence that similarly situated, non-minority employees were allowed to displace less senior employees, whether or not it was required by the TCU labor agreement. There is no evidence that similarly situated, non-minority employees were granted a C-2 hearing, whether or not it was required by the TCU labor agreement. "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Holyfield*, 115 F.3d at 1562 ; *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir.), *reh'g en banc denied*, 116 Fed. Appx. 257 (11th Cir. 2004). Plaintiff makes sweeping allegations that C-2 hearings were "never" denied and training after displacement was "routinely allowed." However, Conaway does not produce the name or existence of one similarly situated, non-minority employee who was treated more favorably under similar circumstances. "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Id*.

Even if the Court assumes that Conaway established his prima facie case, NSR has proffered legitimate, nondiscriminatory reasons for its employment decisions.  Logan testified that he relied on Holt's advice that it was NSR's practice that a displacing employee was only qualified if they were able to sit down and perform the job on day one.  Logan concluded that because Conaway had not worked for twenty-one months, never held the Position in the past, and asked for training, he was not qualified to displace Maddox.  Moon also consulted with Holt and concluded that Rule C-2 of the TCU labor agreement did not provide for a hearing that addressed Plaintiff's disputes.  To avoid summary judgment, Conaway must "either directly persuad[e] the court that a discriminatory reason more likely motivated the employer or indirectly [show] that the employer's proffered explanation is unworthy of credence."  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).  "Plaintiff bears the burden of proving that the employer intentionally discriminated against him because of his race."  *Cooper v. Southern Co.*, 390 F.3d 695, 723 (11th Cir. 2004), *overruled on other grounds, Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457

(2006).  A plaintiff must "meet [the proffered] reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason."  *Brooks v. County Com'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)).  "A reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'"  *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

Plaintiff argues that NSR's reasons are unworthy of credence because they are "nonsensical."  The Court disagrees, but Plaintiff's argument does not establish that race discrimination was the real reason for the denials. Plaintiff also contends that NSR's reasons are wrong.  Conaway maintains that he was qualified to displace Maddox and he was entitled to a C-2 hearing under the TCU labor agreement.  However, the issue is not whether Conaway was entitled to displacement and/or a C-2 hearing.  The issue is whether Logan, Moon, and perhaps Holt, actually believed their interpretations of the TCU labor agreement and NSR practice.  *See Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1261 (11th Cir. 2001) (citing

*Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1339 (11th Cir. 2000) ("A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race."); *see also Davis-Dietz v. Sears, Roebuck and Co.*, 284 Fed. Appx. 626, 630-31 (11th Cir. 2008).  Conaway has not presented any evidence that Logan, Moon, and/or Holt did not believe their interpretations of the TCU labor agreement and NSR practice required the denial of Plaintiff's displacement request and petition for a C-2 hearing.  There is insufficient evidence to establish that unlawful discrimination was the true reason for these decisions. Accordingly, summary judgment will be granted in favor of NSR on these claims.

    B.    Retaliation.

In a retaliation case, a plaintiff "must show the following to establish a prima facie case: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, (11th Cir. 1997); *see also Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008).  To establish a causal connection, a plaintiff

"need only show 'that the protected activity and the adverse action were not wholly unrelated.'" *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (quoting *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)).  "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action.  The defendant's awareness of the protected statement, however, may be established by circumstantial evidence."  *Id.* (quoting *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993)).

It is undisputed that Logan, Moon, and Holt were not aware that Conaway had ever made any complaints alleging race discrimination when decisions were made to deny his displacement request, deny him a C-2 hearing, and deny his May 2007 TCU grievance.  Without any awareness of previous complaints, neither Logan, Moon, nor Holt could have been motivated by retaliatory animus with regard to those decisions.

Conaway also maintains that the Position was abolished in retaliation for his filing an internal EEO complaint with NSR.  Plaintiff argues that Holt, Moon, and the EEO manager discussed the status of the abolishment shortly

after the complaint was received.  There is no evidence, however, that Holt, Moon, or the EEO officer made the decision to abolish the Position or directly caused that decision to be made.  Plaintiff has not introduced any evidence to dispute Holt's testimony that the decision to eliminate the Position was not made by local officials at Norris Yard, but by higher level NSR officers pursuant to a plan to eliminate and/or consolidate clerical positions on a company-wide basis.  And, there is nothing in the record that suggests these higher level officers were aware of Conaway's EEO complaint when their decision was made.  Because there is no evidence of causation, this retaliation claim also fails.

V.     Conclusion.

For the reasons stated above, Defendant's motion for summary judgment will be granted in all respects.  A separate order will be entered.

Done this <u>26th</u> day of <u>August 2010</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297